UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDRE VANCE POWELL,

   Petitioner,

 v.             CAUSE NO. 3:19-CV-198-DRL-MGG

WARDEN,

   Respondent.

OPINION & ORDER

  Andre Vance Powell, a prisoner without a lawyer, filed an amended habeas corpus petition challenging the disciplinary decision (WCC 18-10-0017) at the Westville Correctional Facility in which the Disciplinary Hearing Officer (DHO) found him guilty of a community re-entry center violation under Indiana Department of Correction (IDOC) policy B-250. ECF 21. As a result, he was sanctioned with the loss of 90 days earned credit time. *Id*. The Warden has filed the administrative record, and Mr. Powell has filed his traverse. ECF 29; ECF 30. Thus, this case is fully briefed.

  The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the factfinder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S.

539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In this case, Mr. Powell was found guilty of a community re-entry center violation under IDOC policy B-250. Specifically, IDOC offense B-250 prohibits inmates from:

> (D) Failing to report to work/school as scheduled, being absent from work/school, failing to return to the center/program within prescribed time limits unless approved by the Warden. . . . [and]
>
> (G) While in the community Re-Entry Center/Community Transition Program, refusing to work or accept a work, program or housing assignment, or unauthorized absence from any work or program assignment.

ECF 29-20 at 9. The conduct report charged Mr. Powell as follows:

> On 9/20/18, at approximately 2:00 PM, I caseworker Huffman was informed that offender Andre Powell #951140 had not been reporting to his assigned job, the DNR. He told staff that he had been fired from DNR but upon further investigation it was found that he had not been fired from DNR and had instead just not been going to work. This violates the rules of the re-entry program.

ECF 21-1 at 1.

On October 10, 2018, Mr. Powell was notified of the charge when he was served with the conduct report and screening report. ECF 29-2. He pleaded not guilty and requested witness statements from two officers and a fellow offender. In response to Mr. Powell's request for witness testimony regarding whether Sergeant Boone was the first one to inform him that he was back on the DNR "count letter," Sergeant Boone provided the following statement, "[I]t's impossible for me to say if anyone else informed you of the transportation but I told you on my day back from my days off that you were on the ticket and that you needed to be up for work the next day which would have been the

day of 9-20-18." ECF 29-2; ECF 29-11. In response to Mr. Powell's request for witness testimony regarding whether Sergeant Boone ordered Officer Greenwood to "scratch [him] off the count letter," Officer Greenwood provided the following statement, "Not that I am aware of or can recall." ECF 29-2; ECF 29-12. Additionally, Offender Russell Leach provided the following witness statement in support of Mr. Powell's contentions, "I know he got fired on what date not sure, then sometime later tried getting back on the bus and they Jay would not let him back on because they had fired him. Jay is the DNR person over the DOC." ECF 29-13. Mr. Powell also requested physical evidence in the form of an email from DNR assistant manager Alex deGroot to show that he had not been allowed to "come out to DNR" since July, but he was not provided with that email because it did not exist.[1]

On December 3, 2018, the DHO held Mr. Powell's hearing. ECF 29-10. Mr. Powell again pleaded not guilty. *Id*. After considering the evidence—including the staff reports and the conduct report—the DHO found Mr. Powell guilty of violating offense B-250, noting that the "staff reports [and] conduct report clearly states that offender had not been working." *Id*. Accordingly, the DHO recommended that he be sanctioned with the loss of 90 days earned credit time. *Id*. The DHO noted that the sanctions were imposed

---

[1] Mr. deGroot responded in an email dated September 25, 2018, that there were "no letters or emails or written documentation that I recall or could find. I do recall Powell being a team member that had a very hard time following directions and staying occupied." ECF 29-2; ECF 29-18.

due to the seriousness of the offense and the offender's attitude and demeanor during the hearing. *Id*.

In his amended petition, Mr. Powell presents several grounds that he claims entitle him to relief. ECF 21 at 2–15. The relief he seeks is comprised of three forms: (1) a "stipulation that no offer of a 'rehearing' will be accepted" by the court; (2) a return to the South Bend Community Re-Entry Center; and (3) reimbursement for his lost state wages stemming from the removal of his work assignment upon transfer from the South Bend Community Re-Entry Center. *Id*. at 16–17. He later clarified and reiterated that he seeks to be "returned to the Re-Entry Center pursuant to state law." ECF 28 at 6. He also raises concerns with the conditions of his confinement related to asbestos allegedly used as insulation at the Westville Correctional Facility. *Id*.

As Mr. Powell has been informed in this case and others,[2] the only relief available in a habeas action such as this is the restoration of the 90 days of good time credit. However, because Powell has since been released from prison, a live controversy no longer exists, which renders the case moot. As noted recently by the Seventh Circuit Court of Appeals in a similar case involving Mr. Powell:

> Our jurisdiction is limited to live 'cases and controversies.' U.S. Const. Art. III, § 2U.S. Const. Art. III, § 2; *see United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Auto Driveaway Franchise Systems, LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674 (7th Cir. 2019). A petition for a writ of habeas corpus becomes moot after a petitioner is released from custody unless the petitioner will suffer sufficient collateral consequences from the feature of his custody that he is challenging. *See Spencer v. Kemna*, 523 U.S. 1, 7–14, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982); *Tara Gold Res. Corp. v. S.E.C.*,

---

[2] *See* ECF 26; *see also Powell v. Warden*, 3:19-CV-297-RLM-MGG at ECF 12, ECF 27.

> 678 F.3d 557, 559 (7th Cir. 2012). Although we presume that a criminal conviction has collateral consequences, we do not extend that presumption with respect to prison disciplinary proceedings. *Spencer*, 523 U.S. at 7–16, 118 S.Ct. 978; *Eichwedel v. Curry*, 700 F.3d 275, 279 (7th Cir. 2012) (collecting cases).

*Powell v. Galipeau*, 808 Fed. Appx. 386, 387–88 (7th Cir. 2020). As in that case, the record here indicates that Mr. Powell has been released from the Westville Correctional Facility. According to the Indiana Department of Correction's website, Mr. Powell was released on February 21, 2020, and "[r]eturned to court authority on release." *See* Indiana Offender Database, Andre V. Powell DOC Number 951140, available at: https://www.in.gov/apps/indcorrection/ofs/ofs?lname=powell&fname=andre&search1.x=26&search1.y=14 (last visited September 28, 2020). On March 4, 2020, Mr. Powell filed a notice of change of address from the Elkhart County Work Release to the Faith Mission in Elkhart. ECF 47. On August 10, 2020, Mr. Powell filed another notice of change of address, this time from the Faith Mission to the Elkhart County Correctional Complex. ECF 49. Thus, Mr. Powell's departure from the custody of the Westville Correctional Facility "means that he cannot obtain any potential benefit from a favorable decision" because the Westville Correctional Facility cannot provide him additional relief at this point. *Powell*, 808 Fed. Appx. at 388 (internal quotation marks omitted) (quoting *Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018)). Moreover, Mr. Powell has not established any potential collateral consequences related to the transfer and revocation of his work-release or the disciplinary proceeding itself. *See id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 7–14 (1998); *Lane v. Williams*, 455 U.S. 624 (1982); *Tara Gold Res. Corp. v. S.E.C.*, 678 F.3d 557, 559 (7th Cir. 2012)).

5

Even assuming, *arguendo*, that the case was not moot, none of the actual relief requested by Mr. Powell—including a stipulation that he not be subjected to a rehearing, a transfer to the South Bend Community Re-Entry Center, and monetary damages—would be available here. Mr. Powell claims that his rights were violated when he was transferred out of the South Bend Community Re-Entry Center as punishment prior to a hearing and before being found guilty of the charged offense in violation of both IDOC policy[3] and the Due Process and Equal Protection Clauses of the Constitution. He alleges that the transfer was done in retaliation for filing a grievance. He further alleges that he had a protected liberty interest in his community re-entry placement and that his transfer after only one incident of "work performance" was a departure from the normal penalties without proper justification. ECF 21 at 2–3.

As noted above, the challenge to his transfer is not properly addressed in a habeas corpus action because it does not implicate the fact or duration of his custody. As explained by this circuit and as quoted in a previous order in this case:[4]

> State prisoners who want to raise a constitutional challenge to any other decision, such as transfer to a new prison, administrative segregation, exclusion from prison programs, or suspension of privileges, must instead employ § 1983 or another statute authorizing damages or injunctions—

---

[3] Mr. Powell states, "My transfer was in conflict with Policy 02-02-101, which specifies five grounds on which a transfer can be made, aside from a medical ground." ECF 21 at 2. Of note, the failure to follow departmental policy does not rise to the level of a constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (state-law violations provide no basis for federal habeas relief); *Keller v. Donahue*, 271 F. Appx. 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies had "no bearing on his right to due process").

[4] In that order, Mr. Powell was advised that, if he wanted to "pursue remedies other than the restoration of his earned credit time, he can initiate a separate lawsuit under 42 U.S.C. § 1983, subject to all the usual constraints of the PLRA." ECF 26 at 3.

> when the decision may be challenged at all, which under *Sandin v. Conner* . . . will be uncommon.

*Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000) (citations omitted). Although Mr. Powell argues vigorously that his transfer triggered due process protections and requires habeas relief due to the nature of the South Bend Community Re-Entry Center versus the conditions at the Westville Correctional Facility, his argument falls short. The law squarely addresses this issue in the context of a prisoner seeking transfer to a work-release program:

> The cases suggest the following generalization. If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.
>
> The line is not a sharp one, and work release falls smack in the middle. But since we must choose, we think it is closer to the second pole than to the first. The prisoner remains confined, but instead of spending the daytime hours working in a prison factory, he works in a factory outside the prison. The factories may be identical, proximate, and so forth and the prisoner may be under the same restrictions in either place, in which event only the location differs—not the quantum of confinement. This is not to say that the prisoner will be indifferent between the two forms of confinement. Nor will the two work places always be so similar as in our example. But lines are lines, and we place work release on the civil rights side.

*Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991). Though Mr. Powell's circumstances are not identical to those described in *Graham*, the relief he seeks pushes his claims into civil rights territory. As aptly noted by Judge Miller in a similar case, "These distinctions

7

might seem fuzzy, [but] the court of appeals drew a line and placed claims like those brought by Mr. Powell in the category of civil rights cases, not habeas cases. . . . [T]he court of appeals acknowledged that there would be differences, and nonetheless drew a line." *Powell v. Warden*, No. 3:19-CV-297-RLM-MGG, 2019 WL 5388169, 2–3 (N.D. Ind. Oct. 21, 2019). Thus, even if this case were not moot, the court could not award the relief Mr. Powell seeks in his habeas petition.

For these reasons, the court:

(1) DISMISSES AS MOOT the amended habeas petition (ECF 21);

(2) DENIES AS MOOT the motion for resolution (ECF 40) and motion to clarify the record (ECF 44); and

(3) DIRECTS the clerk to enter judgment and close this case.

SO ORDERED.

September 29, 2020 *s/ Damon R. Leichty*
Judge, United States District Court